**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SHELBY PLAYER-REED,** | ) | |
| | ) | |
| Plaintiff, | ) | CASE No. |
| | ) | |
| v. | ) | JUDGE |
| | ) | |
| **CITY OF CLEVELAND;** | ) | |
| | ) | **COMPLAINT** |
| **HON. CHERYL M. WILTSHIRE,** | ) | *Jury Demand Endorsed Hereon* |
| Judge, Housing Division | ) | |
| (Individual and Official Capacity); | ) | |
| | ) | |
| **GREGORY KENNEDY,** | ) | |
| Director of Human Resources | ) | |
| (Individual Capacity); | ) | |
| | ) | |
| **TANYA JONES,** | ) | |
| Deputy Court Administrator | ) | |
| (Individual Capacity), | ) | |
| | ) | |
| Defendants. | ) | |

A disabled veteran of the United States Navy and a protected civil servant was treated as though she had no rights. Plaintiff Shelby Player-Reed gave the Cleveland Municipal Court nearly twenty years of service. She rose from a General Division deputy bailiff to a sworn, armed Deputy Bailiff of the Court's Housing Division. She was trained, certified, and, by her employer's own most recent evaluation, exemplary. She is a one-hundred-percent permanent-and-total disabled veteran with a known history of protected medical leave. She also held a position that the Ohio General Assembly placed, by name, in the classified civil service of the City of Cleveland.

None of that protected her. On January 2, 2026, in the opening days of a new Housing Court administration, within days of a newly elected judge taking the bench, Ms. Player-Reed was summoned to be told she was being removed and escorted from the building in view of her

coworkers. She received no written order of removal, no statement of cause, no pre-termination hearing, and no notice of any right to appeal. When she asked why, she was told, in the presence of a witness, that no one was obligated to give her a reason. For a classified civil service employee, that answer is not merely callous. It is unlawful.

Ohio Revised Code § 1901.32(B) is not ambiguous. It provides that "[a]ll deputy bailiffs of the housing division of the Cleveland municipal court appointed pursuant to § 1901.331 are in the classified civil service of the city of Cleveland." The same subsection directs the City of Cleveland's civil service commission to certify the list of persons eligible for those positions, from which the judge of the Housing Division designates deputy bailiffs. It provides that upon the removal of a civil service appointee, "an appeal may be taken from the decision of the civil service commission to the court of common pleas of Cuyahoga county to determine the sufficiency of the cause of removal." The statute presupposes a cause and a commission proceeding. Ms. Player-Reed was afforded neither, and the appeal the statute promises her was never made available because the process that triggers it never occurred.

The timing supplies the motive. Ms. Player-Reed's disability, her status as a one-hundred-percent disabled veteran, and her protected medical leave were all known to her employer. Her removal followed no misconduct, there was none, but a change in administration, at the hands of decision-makers who owed her the very process they denied. This action seeks a declaration that Ms. Player-Reed was a classified civil service employee removed in violation of Ohio law, and damages and equitable relief under the Fourteenth Amendment, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and the Family and Medical Leave Act.

## I. JURISDICTION AND VENUE

1. This action arises under the Fourteenth Amendment to the United States Constitution; 42 U.S.C. §§ 1983 and 1988; the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq. This Court has original subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4).

2. This Court has authority to declare the rights and legal relations of the parties and to grant further necessary or proper relief under 28 U.S.C. §§ 2201 and 2202.

3. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's claim arising under Ohio Revised Code § 1901.32(B), which shares a common nucleus of operative fact with Plaintiff's federal claims. That claim is asserted against the City of Cleveland alone. The City is an Ohio municipal corporation, is not an arm of the State, and enjoys no Eleventh Amendment immunity. The limitation recognized in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984), on the exercise of federal jurisdiction over state-law claims against state officials is therefore inapplicable to this Count.

4. Plaintiff has exhausted her administrative remedies as to her claims under the Americans with Disabilities Act. She timely filed a Charge of Discrimination alleging disability discrimination and retaliation with the United States Equal Employment Opportunity Commission, Cleveland Field Office (Charge No. 532-2026-01599), cross-filed with the Ohio Civil Rights Commission. The EEOC issued a Determination and Notice of Rights dated July 23, 2026, and Plaintiff received the Notice on approximately that same day. This Complaint is filed within ninety days of that receipt and is timely. Neither the Family and Medical Leave Act nor Section 504 of the Rehabilitation Act requires exhaustion of administrative remedies.

5. Venue is proper in this District and Division under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Cuyahoga County, Ohio, and all Defendants reside or conduct business within this judicial district.

## II. PARTIES

### A. Plaintiff

6. Plaintiff Shelby Player-Reed (formerly known as Shelby Player) is a resident of Cleveland, Cuyahoga County, Ohio. She is a veteran of the United States Navy rated one-hundred-percent permanent and total (100% P&T) service-connected disabled by the United States Department of Veterans Affairs. At all relevant times she was a qualified individual with a disability who performed the essential functions of her position with or without reasonable accommodation. She brings this action in her individual capacity.

### B. Defendants

7. Defendant City of Cleveland is an Ohio municipal corporation and a "person" subject to suit under 42 U.S.C. § 1983. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). By statute, the deputy bailiffs of the Housing Division of the Cleveland Municipal Court are in the classified civil service "of the city of Cleveland"; the City's civil service commission certifies the list of persons eligible for those positions; and those employees are compensated from the city treasury. Ohio Rev. Code § 1901.32(B). The City establishes and maintains the civil service system, the position classifications, and the personnel and payroll records that governed Plaintiff's employment. At all relevant times the City was Plaintiff's employer or, in the alternative, her joint employer within the meaning of the Americans with Disabilities Act, the Rehabilitation Act, and the Family and Medical Leave Act. The City is not an arm of the State and is not entitled to Eleventh Amendment or sovereign immunity.

8. At all relevant times the City of Cleveland employed in excess of five hundred employees and is therefore a covered "employer" within the meaning of 42 U.S.C. § 12111(5)(A). The City is a "public agency" and therefore a covered "employer" within the meaning of 29 U.S.C. § 2611(4)(A)(iii), and it employed fifty or more employees within seventy-five miles of Plaintiff's worksite. The City is a recipient of federal financial assistance, and its operations constitute a "program or activity" within the meaning of 29 U.S.C. § 794(b)(1)(A).

9. Defendant Hon. Cheryl M. Wiltshire is the Judge and Administrative Judge of the Cleveland Municipal Court, Housing Division. She was elected in November 2025, took office in January 2026, and remains in office today. Under Ohio Revised Code § 1901.32(B), the judge of the Housing Division designates deputy bailiffs from the eligibility list certified by the City's civil service commission, and an appointee "may be dismissed or discharged by the same power that appointed the appointee." Judge Wiltshire is sued in her individual capacity for damages and, in her official capacity as the appointing and removing authority for the position Plaintiff held, for prospective relief only. She acted under color of state law. She is not sued for any judicial or adjudicative act. A judge's decision to remove a court employee is an administrative act, not a judicial one, and absolute judicial immunity is therefore unavailable. *Forrester v. White*, 484 U.S. 219 (1988).

10. Defendant Gregory Kennedy is the Director of Human Resources of the Cleveland Municipal Court and remains employed in that capacity. He was present at and personally participated in Plaintiff's removal. He is sued in his individual capacity and acted under color of state law.

11. Defendant Tanya Jones is the Deputy Court Administrator of the Cleveland Municipal Court and remains employed in that capacity. She was present at and personally participated in Plaintiff's removal. She is sued in her individual capacity and acted under color of state law.

12. The Cleveland Municipal Court, Housing Division, is not named as a Defendant. Under Ohio law, and therefore under Federal Rule of Civil Procedure 17(b)(3), a court is not a legal entity capable of suing or being sued absent express statutory authority. *State ex rel. Cleveland Municipal Court v. Cleveland City Council*, 34 Ohio St. 2d 120 (1973); *Malone v. Court of Common Pleas of Cuyahoga County*, 45 Ohio St. 2d 245, 248 (1976); see also *Lawson v. City of Youngstown*, 912 F. Supp. 2d 527, 529–31 (N.D. Ohio 2012) (dismissing an Ohio municipal court on this ground under Fed. R. Civ. P. 17(b)(3)). Relief that would otherwise be directed to the Housing Division is sought against Judge Wiltshire in her official capacity.

13. Plaintiff seeks monetary relief from the City of Cleveland and from Defendants Wiltshire, Kennedy, and Jones in their individual capacities. Plaintiff seeks prospective relief from Judge Wiltshire in her official capacity, under *Ex parte Young*, 209 U.S. 123, 159–60 (1908), to remedy an ongoing violation of federal law. Judge Wiltshire is named in that capacity solely because Ohio Revised Code § 1901.32(B) vests the authority to appoint and remove deputy bailiffs of the Housing Division in the judge of that division; the relief sought would require her to act in that administrative capacity alone, and no relief is sought against her as an adjudicator or with respect to any case before her court. Plaintiff seeks no damages from any Defendant in an official capacity.

## III. FACTUAL ALLEGATIONS

### A. Ms. Player-Reed's Service and Classified Status

14. Ms. Player-Reed began her employment with the Cleveland Municipal Court on or about July 17, 2006, serving in the General Division as a security deputy bailiff. On or about July 31, 2017, she transferred to the Housing Division, where the Judge of the Housing Division appointed her, pursuant to Ohio Revised Code § 1901.331, to the position of Deputy Bailiff. She served continuously and in good standing until her removal on January 2, 2026, approximately nineteen and one-half years of public service.

15. By journal entry dated August 1, 2017, the Judge of the Housing Division certified that, effective July 31, 2017, and "in accordance with Ohio Revised Code, Section 1901.331," Ms. Player-Reed was appointed to a Deputy Bailiff position in the Housing Division. She took the oath of office.

16. Effective January 27, 2020, the Court's own Deputy Court Administrator reviewed Ms. Player-Reed's actual job duties and responsibilities and reclassified her position to "Housing Court Deputy Bailiff," confirming in writing that her duties were those of a Housing Division deputy bailiff. The Court thereafter treated and documented her as a Deputy Bailiff of the Housing Division.

17. Ms. Player-Reed performed the duties of a sworn law-enforcement officer of the Court. She completed the Ohio Peace Officer / Bailiff Basic Training Program, held firearm and TASER certifications, was authorized by order of the Housing Division to carry a handgun on field duty, and performed courtroom-security, field, and eviction-related duties for the Housing Division. She was regularly called upon to train new employees.

18. Ohio Revised Code § 1901.32(B) provides that "[a]ll deputy bailiffs of the housing division of the Cleveland municipal court appointed pursuant to [§ 1901.331] are in the classified

civil service of the city of Cleveland." The same subsection provides that, upon the demand of the judge of the Housing Division, "the civil service commission of the city of Cleveland shall certify a list of those eligible for the position of deputy bailiff of the housing division," and that "[f]rom the list, the judge of the housing division shall designate the number of deputy bailiffs that the judge determines are necessary."

19. Ms. Player-Reed was a deputy bailiff of the Housing Division appointed pursuant to § 1901.331. She was therefore in the classified civil service of the City of Cleveland as a matter of law, and her classified status did not depend on any discretionary act, designation, or label applied by any Defendant.

20. As a classified civil service employee, Ms. Player-Reed could be removed only for cause and only in accordance with the procedures governing the removal of classified employees, including written notice of the charges against her, an opportunity to respond, and the right to appeal. Ohio Revised Code § 1901.32(B) expressly contemplates that upon the removal of a civil service appointee, "an appeal may be taken from the decision of the civil service commission to the court of common pleas of Cuyahoga county to determine the sufficiency of the cause of removal," and that "[t]he appeal shall be taken within ten days of the finding of the commission."

21. To the extent Defendants or the City labeled Ms. Player-Reed's position "unclassified," or titled it "Housing Court Coordinator" on internal personnel documents, no such administrative label can override the classification fixed by statute. Her appointment under § 1901.331, her actual duties as a Housing Division deputy bailiff, and the Court's own January 2020 reclassification of her position to "Housing Court Deputy Bailiff" establish that she occupied a classified position within the meaning of § 1901.32(B).

22. Upon information and belief, the City of Cleveland has a policy, practice, or custom of classifying, administering, and treating statutorily classified Housing Division deputy bailiff positions as unclassified or at-will, and of failing to afford the incumbents of those positions the notice, hearing, and appeal rights that classified status requires. That policy, practice, or custom was a moving force behind the deprivation alleged in Count II.

**B. An Exemplary Record**

23. Throughout her tenure, Ms. Player-Reed maintained a record substantially free of discipline. She was never written up, disciplined, or placed on a performance improvement plan. In her most recent performance appraisal, dated February 4, 2025, less than eleven months before her removal, she received the highest available ratings across nearly every performance factor, was described as "exemplary," and was recognized as an employee who trained new personnel and "goes above and beyond." No one ever told her that her job was at risk.

**C. Known Disability and Protected Leave**

24. Ms. Player-Reed is a service-connected disabled veteran rated one-hundred-percent permanent and total by the Department of Veterans Affairs. She has service-connected medical conditions that substantially limit one or more major life activities, including the operation of major bodily functions. Her employer knew of her disability and of her status as a disabled veteran, including through her VA documentation and through her protected medical leave.

25. Ms. Player-Reed was approved for and took leave under the Family and Medical Leave Act for her own serious health condition, most recently on or about February 12, 2025. Her employer had actual knowledge of her FMLA leave and of the reasons for it.

26. Ms. Player-Reed's employer was aware of, and for years had accommodated, a work restriction connected to her service-connected condition that limited how frequently she rotated into courtroom assignments. Coworkers complained that the restriction was unfair to them, and management expressed frustration regarding her absences and her protected medical leave. Her disability and her use of protected leave were, accordingly, a subject of ongoing discussion and dissatisfaction within the workplace before her removal.

**D. A New Administration**

27. On November 4, 2025, Judge Cheryl M. Wiltshire was elected Judge of the Cleveland Municipal Court, Housing Division, succeeding the incumbent judge. Judge Wiltshire took office in January 2026. Ms. Player-Reed's removal occurred within days of that change in administration.

**E. Removal Without Cause, Hearing, or Appeal**

28. On January 2, 2026, Ms. Player-Reed was summoned to a judge's chambers. Present were Defendant Gregory Kennedy, Director of Human Resources, and Defendant Tanya Jones, Deputy Court Administrator. She was removed from her position effective that day.

29. Defendants issued no written order of removal stating cause. They gave Ms. Player-Reed no advance written notice of any charges, no explanation of any evidence against her, no pre-termination hearing or opportunity to respond, no meaningful post-termination process, and no notice of any right to appeal or grieve the removal. When she asked the reason for her removal, she was told, in the presence of a witness, that there was no obligation to provide one. That statement is an admission that no cause was stated and no process was afforded.

30. Following the meeting, Ms. Player-Reed was escorted from the courthouse in view of coworkers with whom she had served for years.

31. Ms. Player-Reed was given no lawful cause for her removal. To the extent any reason is later asserted, it is pretextual. She had no disciplinary history, had received uniformly strong evaluations, and was removed only after her disability, her status as a disabled veteran, and her protected medical leave had become known, and only after a change in administration.

**F. No Administrative Remedy Was Available**

32. The appeal mechanism described in Ohio Revised Code § 1901.32(B) is triggered by "the decision of the civil service commission" and must be taken "within ten days of the finding of the commission." Defendants never charged Ms. Player-Reed with any cause, never initiated any removal proceeding before the civil service commission, and never obtained or sought any finding or decision of the commission. No such decision or finding exists.

33. Because Defendants never began the process that the statute requires, the statutory appeal never became available to Ms. Player-Reed, and there was no administrative decision from which she could have appealed. Any attempt to invoke that remedy would have been futile. Plaintiff has exhausted all administrative remedies that were actually available to her, and any further exhaustion requirement is excused.

**G. Harm**

34. At the time of her removal, Ms. Player-Reed was enrolled in the Ohio Public Employees Retirement System (OPERS), earned an annual salary of approximately $60,000, and was approximately ten and one-half years from retirement eligibility.

35. Reinstatement to the Housing Division is not a practicable remedy. Each of the individual Defendants who participated in Ms. Player-Reed's removal, Judge Wiltshire, Mr. Kennedy, and Ms. Jones—remains in the position he or she held on January 2, 2026, and reinstatement would return Ms. Player-Reed to their direct authority and supervision. Moreover, the

position of Housing Division deputy bailiff is a sworn, armed law-enforcement post involving courtroom security, field work, and the service and enforcement of eviction orders, duties in which an officer must be able to rely without hesitation on the support of peers, supervisors, and the judge she serves. The circumstances of Ms. Player-Reed's removal have irreparably damaged that relationship. Front pay through the date of her retirement eligibility, together with full restoration of her retirement benefits, is therefore the appropriate remedy. To the extent this Court determines that reinstatement is appropriate and practicable, Plaintiff seeks reinstatement in the alternative, with full seniority and benefits.

36. As a direct and proximate result of Defendants' conduct, Ms. Player-Reed has suffered lost wages and benefits; substantial loss to her OPERS pension and retirement benefits, including her final-average-salary determination and service-credit accrual; emotional distress; reputational harm; and other injury.

## IV. CLAIMS FOR RELIEF

### COUNT I

### Unlawful Removal of a Classified Civil Service Employee
### Ohio Revised Code §§ 1901.32(B) and 1901.331; 28 U.S.C. §§ 2201–2202

*(Against the City of Cleveland)*

37. Plaintiff incorporates by reference all preceding paragraphs.

38. At all relevant times Plaintiff was a deputy bailiff of the Housing Division of the Cleveland Municipal Court, appointed pursuant to Ohio Revised Code § 1901.331, and was therefore in the classified civil service of the City of Cleveland under § 1901.32(B).

39. As a classified civil service employee, Plaintiff could be removed only for cause and only in accordance with the procedures governing the removal of classified employees, including

notice of the charges, an opportunity to respond, and the right to appeal the sufficiency of the cause of removal.

40. Plaintiff was removed without cause and without any of the process the law requires, in violation of Ohio Revised Code § 1901.32(B).

41. An actual, present, and justiciable controversy exists between Plaintiff and the City of Cleveland concerning Plaintiff's classified civil service status and the lawfulness of her removal. Plaintiff is entitled to a declaration under 28 U.S.C. §§ 2201 and 2202 that she was a classified civil service employee of the City of Cleveland within the meaning of Ohio Revised Code § 1901.32(B), that she could be removed only for cause and with process, and that her removal was unlawful. That declaration establishes the property interest that underlies Count II and is a necessary predicate to the relief sought in this action.

**COUNT II**
**Deprivation of Procedural Due Process**
**Fourteenth Amendment and 42 U.S.C. § 1983**

*(Against Defendants Wiltshire, Kennedy, and Jones in their individual capacities; against the City of Cleveland; and against Judge Wiltshire in her official capacity for prospective relief)*

42. Plaintiff incorporates by reference all preceding paragraphs.

43. By virtue of her classified civil service status and the Ohio statutes governing her employment, Plaintiff possessed a legitimate claim of entitlement to continued employment and therefore a constitutionally protected property interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972) (a protected property interest requires "a legitimate claim of entitlement," the dimensions of which are "defined by existing rules or understandings that stem from an independent source such as state law"); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

44. The Due Process Clause of the Fourteenth Amendment entitled Plaintiff, before removal, to oral or written notice of the charges against her, an explanation of the employer's evidence, and an opportunity to present her side of the story, and, after removal, to a meaningful opportunity to be heard. *Loudermill*, 470 U.S. at 545–46; *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

45. Loudermill arose from the removal of an Ohio classified civil servant by a Cleveland public employer. The employee there, like Plaintiff here, held a position that Ohio law made terminable only for cause and subject to review before the Cleveland Civil Service Commission. *Loudermill*, 470 U.S. at 535–36 (citing Ohio Rev. Code §§ 124.11, 124.34).

46. The measure of process constitutionally required is a question of federal law. It is neither defined nor limited by the Ohio statute that created Plaintiff's entitlement. "'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty," and while a legislature "may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Loudermill,* 470 U.S. at 541. The appeal mechanism described in Ohio Revised Code § 1901.32(B) therefore does not define the full measure of process Plaintiff was due, and Defendants' failure to afford any pre-termination notice or opportunity to respond violated the Fourteenth Amendment irrespective of what post-deprivation remedy Ohio law may nominally supply.

47. Acting under color of state law, Defendants deprived Plaintiff of that property interest without any pre-termination notice, explanation, or opportunity to respond; without any stated cause; and without any meaningful post-termination process. Defendants Wiltshire, Kennedy, and Jones each personally participated in, directed, or ratified that deprivation.

48. The deprivation did not result from the random or unauthorized act of a subordinate employee, but from the deliberate decision of officials vested with final authority over Plaintiff's employment. The availability of any post-deprivation remedy does not cure the violation, because the constitutional injury alleged is the denial of pre-termination notice and an opportunity to respond, process that Loudermill requires the employer to provide before it acts. In any event, no post-deprivation remedy was available to Plaintiff, for the reasons alleged above.

49. The City of Cleveland is liable under Monell on two independent grounds. First, the removal of a Housing Division deputy bailiff is committed by Ohio Revised Code § 1901.32(B) to the appointing power, which exercises final, unreviewable authority over the removal of employees the same statute places in the City's classified civil service; that official's decision is therefore the act of the municipality for purposes of § 1983. Second, the City's policy, practice, or custom of administering statutorily classified Housing Division deputy bailiff positions as unclassified or at-will, and of failing to afford their incumbents the process classified status requires, was itself a moving force behind the deprivation.

50. Absolute judicial immunity is unavailable to Judge Wiltshire because the decision to remove a court employee is an administrative act rather than a judicial one. *Forrester*, 484 U.S. 219.

51. Qualified immunity is unavailable to any individual Defendant because the right of a classified public employee to notice and an opportunity to respond before termination was clearly established long before January 2, 2026. *Loudermill,* 470 U.S. at 545–46.

52. As a direct and proximate result, Plaintiff is entitled to compensatory damages, equitable and prospective relief, attorney's fees and costs under 42 U.S.C. § 1988, and punitive damages

against the individual Defendants in their individual capacities under *Smith v. Wade*, 461 U.S. 30, 56 (1983).

**COUNT III**
**Disability Discrimination**
**Americans with Disabilities Act, 42 U.S.C. § 12112**
*(Against the City of Cleveland)*

53. Plaintiff incorporates by reference all preceding paragraphs.

54. At all relevant times Plaintiff was a qualified individual with a disability who could perform the essential functions of her position with or without reasonable accommodation, and the City of Cleveland was a covered employer within the meaning of 42 U.S.C. § 12111.

55. Defendant discriminated against Plaintiff on the basis of her disability by removing her from employment, in violation of 42 U.S.C. § 12112(a). Any reason now proffered for the removal is pretextual, as shown by Plaintiff's exemplary record, the complete absence of any stated cause at the time of removal, the refusal to provide a reason on request, and the timing of the removal.

56. The limitation on injunctive relief against judicial officers in 42 U.S.C. § 1983 is inapplicable. That limitation reaches only acts taken in a judicial officer's judicial capacity. The removal of a classified civil service employee is an administrative act, and the relief sought would require Judge Wiltshire to act solely in her administrative capacity as appointing authority. *Forrester*, 484 U.S. at 227; *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 736 (1980).

57. As a direct and proximate result, Plaintiff is entitled to back pay, front pay, compensatory damages, and attorney's fees and costs. Consistent with 42 U.S.C. § 1981a(b)(1), Plaintiff does not seek punitive damages against the City of Cleveland under this Count.

**COUNT IV**
**Retaliation**
**Americans with Disabilities Act, 42 U.S.C. § 12203**
*(Against the City of Cleveland)*

58. Plaintiff incorporates by reference all preceding paragraphs.

59. Plaintiff engaged in activity protected by the Americans with Disabilities Act, including requesting and using disability-related medical leave and maintaining a known, employer-accommodated work restriction connected to her service-connected condition. Defendant had knowledge of that protected activity.

60. Defendant removed Plaintiff because of that protected activity, in violation of 42 U.S.C. § 12203(a). The proximity between Plaintiff's protected activity and her removal, her unblemished record, management's expressed frustration with her absences and leave, and the absence of any stated cause support an inference of retaliation.

61. As a direct and proximate result, Plaintiff is entitled to back pay, front pay, compensatory damages, and attorney's fees and costs. Consistent with 42 U.S.C. § 1981a(b)(1), Plaintiff does not seek punitive damages against the City of Cleveland under this Count.

**COUNT V**
**Disability Discrimination**
**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**
*(Against the City of Cleveland; and, in the alternative, against Judge Wiltshire in her official capacity)*

62. Plaintiff incorporates by reference all preceding paragraphs.

63. At all relevant times the City of Cleveland, and the Cleveland Municipal Court, Housing Division, were recipients of federal financial assistance and were engaged in a "program or activity" within the meaning of 29 U.S.C. § 794(b). By accepting federal financial assistance,

those entities waived any Eleventh Amendment or sovereign immunity as to claims arising under Section 504. See 42 U.S.C. § 2000d-7.

64. Plaintiff is an individual with a disability who was qualified for and able to perform the essential functions of her position with or without reasonable accommodation.

65. Solely by reason of her disability, Plaintiff was excluded from participation in, denied the benefits of, and subjected to discrimination under a program or activity receiving federal financial assistance, including by her removal from employment, in violation of 29 U.S.C. § 794.

66. This Count is pleaded against the City of Cleveland as Plaintiff's employer and, in the alternative and to the extent the Court determines that the Housing Division rather than the City was Plaintiff's employer, against Judge Wiltshire in her official capacity as the representative of that entity.

67. As a direct and proximate result, Plaintiff is entitled to back pay, front pay, equitable relief, and reasonable attorney's fees and costs under 29 U.S.C. § 794a. Consistent with *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230 (2022), Plaintiff does not seek emotional distress damages under this Count, and consistent with *Barnes v. Gorman*, 536 U.S. 181, 189 (2002), Plaintiff does not seek punitive damages under this Count.

**COUNT VI**
**Interference with FMLA Rights**
**Family and Medical Leave Act, 29 U.S.C. § 2615(a)(1)**
*(Against the City of Cleveland)*

68. Plaintiff incorporates by reference all preceding paragraphs.

69. Plaintiff was an eligible employee within the meaning of 29 U.S.C. § 2611(2). She had been employed by Defendant for more than twelve months and had worked at least 1,250 hours during the twelve-month period preceding her leave, and Defendant employed fifty or more

employees within seventy-five miles of her worksite. Defendant was a covered employer within the meaning of 29 U.S.C. § 2611(4).

70. Plaintiff was entitled to and took leave under the Family and Medical Leave Act for her own serious health condition. Defendant interfered with, restrained, and denied the exercise of her rights under the Act, including by removing her from employment rather than restoring and maintaining her in it, in violation of 29 U.S.C. § 2615(a)(1).

71. Defendant's violation was willful. Plaintiff is entitled to lost wages, salary, employment benefits, and other compensation; liquidated damages; interest; equitable relief including front pay; and attorney's fees and costs under 29 U.S.C. § 2617.

**COUNT VII**
**FMLA Retaliation**
**Family and Medical Leave Act, 29 U.S.C. § 2615(a)(2)**
*(Against the City of Cleveland)*

72. Plaintiff incorporates by reference all preceding paragraphs.

73. Plaintiff exercised her rights under the Family and Medical Leave Act, and Defendant had actual knowledge of that protected activity. Defendant removed her because she exercised those rights, in violation of 29 U.S.C. § 2615(a)(2). The proximity between her protected leave and her removal, her strong performance record, management's expressed frustration with her absences, and the absence of any stated cause support an inference of retaliation.

74. Defendant's violation was willful. Plaintiff is entitled to lost wages, salary, employment benefits, and other compensation; liquidated damages; interest; equitable relief including front pay; and attorney's fees and costs under 29 U.S.C. § 2617.

## V. DAMAGES

75. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages, including lost wages, back pay, and lost benefits; front pay through the date of her retirement eligibility; substantial loss to her OPERS pension and retirement benefits, including her final-average-salary determination and service-credit accrual; emotional distress and dignitary harm; reputational harm; the deprivation of rights secured by the Fourteenth Amendment, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Family and Medical Leave Act; liquidated damages under the Family and Medical Leave Act; and attorney's fees and costs under 42 U.S.C. § 1988, the Americans with Disabilities Act, the Rehabilitation Act, and the Family and Medical Leave Act.

76. Punitive damages are warranted against Defendants Wiltshire, Kennedy, and Jones in their individual capacities under Count II. Their removal of a classified, decorated, and disabled employee without any cause or process was motivated by evil motive or intent, or at a minimum involved reckless or callous indifference to Plaintiff's federally protected rights. *Smith v. Wade*, 461 U.S. at 56. Consistent with *City of Newport v. Fact Concerts, Inc*., 453 U.S. 247, 271 (1981), and 42 U.S.C. § 1981a(b)(1), Plaintiff seeks no punitive damages against the City of Cleveland.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Shelby Player-Reed respectfully requests that this Court enter judgment in her favor and against Defendants and award the following relief:

A. A declaratory judgment that Plaintiff was a classified civil service employee of the City of Cleveland within the meaning of Ohio Revised Code § 1901.32(B), that she could be

removed only for cause and with process, and that Defendants violated her rights under Ohio Revised Code § 1901.32(B), the Fourteenth Amendment, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and the Family and Medical Leave Act;

B. Front pay through her date of retirement eligibility in lieu of reinstatement or, in the alternative and to the extent this Court determines reinstatement to be appropriate, reinstatement to her former position with full seniority and benefits;

C. Back pay, including all lost wages, benefits, and increases she would have received, with prejudgment interest;

D. Restoration of all pension and retirement benefits, including her OPERS account, service credit, and final-average-salary calculation, or the actuarial value thereof;

E. Compensatory damages for emotional distress, reputational harm, and other injury, in amounts to be determined at trial;

F. Liquidated damages under the Family and Medical Leave Act, 29 U.S.C. § 2617;

G. Punitive damages against Defendants Wiltshire, Kennedy, and Jones in their individual capacities under 42 U.S.C. § 1983;

H. An order, pursuant to Ex parte Young, directing Judge Wiltshire in her official capacity to expunge the removal from Plaintiff's personnel and civil service records and, in the alternative to front pay, to reinstate Plaintiff to her former position;

I. Reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 1988, the Americans with Disabilities Act, 29 U.S.C. § 794a, and 29 U.S.C. § 2617;

J. Pre- and post-judgment interest as allowed by law; and

K. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff Shelby Player-Reed hereby demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

Karrie D. Howard, Esq. (0082858)
**HOWARD LEGAL SERVICES LLC**
1414 S. Green Rd., Ste. 203, PMB 16
South Euclid, Ohio 44121
(330) 774-9198
khoward@howardlegalservices.com

*Attorney for Plaintiff Shelby Player-Reed*